**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KURTIS G. SHAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-04-595-CH |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Kurtis G. Shaver, seeks judicial review of the final decision by the Defendant Commissioner denying Mr. Shaver's application for disability insurance benefits and supplemental security income benefits (SSI benefits). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge to order the entry of judgment in this case. The Commissioner has answered and filed the administrative record ("AR"). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings.

**I.   Background**

Mr. Shaver applied for disability insurance benefits and SSI benefits on February 19, 2002, alleging disability due to degenerative disc disease of the cervical spine and low back, obstructive airway disease and hypertension, with an onset date of October 2, 2000. Mr. Shaver's application was denied initially and on reconsideration. Upon his request, a hearing

was held before an Administrative Law Judge (ALJ), and after consideration of the evidence, the ALJ found that Mr. Shaver was not disabled. The Appeals Council denied Mr. Shaver's request for review making the ALJ's decision the final decision of the Commissioner.

## II.     Standard of Review

On review of the Commissioner's decision the district court must determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted). The court considers whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988), but the court will not reweigh the evidence or substitute its judgment for the Commissioner's. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). If the Commissioner's decision lacks substantial evidence or is based upon an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence.").

### III.     Plaintiff's Claims

Mr. Shaver raises three claims of error in his appeal of the Commissioner's decision. First, he contends the ALJ's decision violates the treating physician rule because the ALJ did not properly analyze the opinion of Mr. Shaver's treating physician, Dr. Stranathan. Second, Mr. Shaver contends the ALJ's decision is erroneous because the ALJ failed to consider Mr. Shaver's impairments of obesity and chronic pain syndrome. Finally, Mr. Shaver contends the ALJ's credibility determination regarding Mr. Shaver's subjective complaints of pain is not supported by substantial evidence.

### IV.     Analysis

#### A.     The ALJ's Analysis of Dr. Stranathan's Opinions

Mr. Shaver first claims the ALJ erred in analyzing the opinions of his treating physician, Dr. Stranathan. In part, Mr. Shaver contends the ALJ failed to discuss Dr. Stranathan's opinions rendered in 2002, and cited only the opinion rendered in 2003. Mr. Shaver further contends the ALJ failed to adequately review the medical records that support Dr. Stranathan's opinions, including other medical records of Dr. Stranathan as well as those from other sources. Mr. Shaver additionally claims that the ALJ improperly addressed the weight given to the opinion of a consultative examiner, Dr. Morgan, whose findings Mr. Shaver alleges are consistent with the opinions of Dr. Stranathan.

### 1.     Dr. Stranathan's Treatment Records and Opinions

The treatment records of Dr. Stanathan cover the time period from October 1999 through January 2003. AR 183-185, 213-218. In October 1999, Dr. Stranathan noted that Mr. Shaver had symptoms of numbness in his hands, sleep apnea and chronic obstructive pulmonary disease. AR 185. He also noted that Mr. Shaver had suffered a tick bite. *Id*.

Dr. Stranathan next saw Mr. Shaver in October 2000. He noted that Mr. Shaver suffered from numbness in his arms with weakness and tingling. He suspected neuropathy of the upper extremities and referred Mr. Shaver to a neurologist, Dr. Reitz. AR 185.[1]

In February 2001, Dr. Stranathan diagnosed Mr. Shaver with chronic pain syndrome and made a notation in the treatment records to rule out fibromyalgia. AR 184. Dr. Stranathan noted that Mr. Shaver had been experiencing "shooting numbness" in all four extremities that began after he was struck by a cow in the left shoulder. *Id*.[2] In July 2001, Dr. Stranathan opined that Mr. Shaver is "functionally unable to sustain employment." *Id*. He again diagnosed Mr. Shaver with chronic pain syndrome and possible fibromyalgia. *Id*. With respect to the chronic pain syndrome, Dr. Stranathan stated: "I think that this has been shown over the past several months." *Id*.[3]

---

[1] The record does not include any reports or other medical evidence of Dr. Reitz.

[2] Mr. Shaver's medical records show that in 1998, he suffered an injury to his left shoulder while sorting cattle. AR 155.

[3] Dr. Stranathan's records reflect that Mr. Shaver was referred to a pain clinic but was unable to make the appointment due to transportation difficulties. AR 184.

In January 2002, Dr. Stranathan saw Mr. Shaver for complaints of back pain. He diagnosed Mr. Shaver with acute sacroiliitis and significant inflammation. Mr. Shaver was given a joint injection. AR 183.

One month later in February 2002, Dr. Stranathan diagnosed Mr. Shaver with cervical radiculopathy and noted Mr. Shaver's "obvious inability to stay with one occupation for any length of time" due to multiple complaints of pain in his neck and low back. *Id*.

In July 2002, Dr. Stranathan again saw Mr. Shaver. He presented with complaints of pain in his right shoulder which Dr. Stranathan opined was due to cervical radiculopathy. At that time, Dr. Stranathan opined that Mr. Shaver "is still unable to function in doing meaningful work due to the chronic recurrent pain that occurs when he tries to do any kind of sustained activity." AR 215.

In October 2002, Dr. Stranathan completed a "to whom it may concern" memo stating that based upon his July 2002 examination of Mr. Shaver, it was his opinion that Mr. Shaver was "unable to perform any meaningful jobs due to his persistent shoulder pain." AR 214.

On January 23, 2003, Dr. Stranathan completed a similar "to whom it may concern" memo based upon his evaluation on that same date. Again, Dr. Stranathan opined that Mr. Shaver "is unable to perform any meaningful jobs at the present time due to his persistent shoulder pain." AR 213.

## 2. The ALJ's Analysis of Dr. Stranathan's Opinions

The ALJ stated the following regarding Dr. Stranathan's treatment records for the time period October 1999 through July 2002:

> Dr. Stranathan's notes reflect that the claimant received intermittent evaluation for cervical pain that reportedly radiated to his upper extremities. Dr. Stranathan has also reported that the claimant has complained of persistent shoulder pain.

AR 20. Then the ALJ identified one of Dr. Stranathan's opinions and rejected it:

> On January 23, 2002,[4] Dr. Stranathan offered an opinion that the claimant would be prevented from working due to persistent shoulder pain. Treating source opinions are ordinarily entitled to receive controlling weight, unless they conflict with other substantial evidence or are not well supported. [Citation omitted]. However, opinions regarding the ultimate issue of disability are reserved to the Commissioner by regulation. [Citation omitted]. Thus, Dr. Stranathan's broad conclusion cannot be accepted. As Dr. Stranathan did not provide details regarding the claimant's physical abilities, greater weight was given to the conclusions of the state agency consultants discussed below, as they assessed specific functional abilities.

AR 20. The ALJ did not mention Dr. Stranathan's diagnosis of chronic pain syndrome or his earlier opinions based on his July 2002 evaluation, to the effect that Mr. Shaver experienced "chronic recurrent pain that occurs when he tries to do any kind of sustained activity." AR 215. The Court now addresses whether the ALJ's consideration of Dr. Stranathan's opinions is legally sufficient.

Tenth Circuit precedent provides for a staged analysis of a treating physician opinion. First, the ALJ must determine whether the opinion of a treating physician qualifies for

---

[4]This appears to be a typographical error as the date of Dr. Stranathan's opinion is January 23, 2003. AR 213.

"controlling weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). To make this determination the ALJ first determines whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. "If the answer to that question is 'no,' then the inquiry at this stage is complete." *Id*. If, on the other hand, the answer to the question is yes, the ALJ must then confirm that the opinion is consistent with other substantial evidence in the record. If deficient in either respect, the opinion is not entitled to controlling weight. *Id*.

If the treating physician's opinion is not given controlling weight, the opinion still must be given deference and must be weighed using a number of factors. *Id*.[5] If the ALJ chooses to reject the treating physician opinion entirely, the ALJ must set forth specific legitimate reasons for doing so. *Id*. As explained in policy interpretations regarding treating source evidence:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis

---

[5]Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id*. at 1119 (quotation and citation omitted).

>of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6-7.

The ALJ did not give controlling weight to Dr. Stranathan's January 23, 2003, disability opinion, because he viewed it as an opinion on the ultimate issue of disability -- an opinion "reserved to the Commissioner by regulation." AR 20. The Commissioner is correct that "[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight." *See id*. at *6. *See also White v. Barnhart*, 287 F.3d 903, 906 (10th Cir. 2001) ("a treating physician's opinion is not dispositive on the ultimate issue of disability"). Therefore, it was not erroneous for the ALJ to refuse to give Dr. Stranathan's January 2003 opinion controlling weight. It is the ALJ's further analysis that is in error.

The ALJ rejected Dr. Stranathan's opinion on the ground that Dr. Stranathan "did not provide details regarding Mr. Shaver's physical abilities." AR 20. The ALJ found that in contrast to Dr. Stranathan's opinion, state agency consultants "assessed specific functional abilities" and, therefore, their opinions were entitled to greater weight. AR 21. The ALJ did not recontact Dr. Stranathan to receive his assessment of specific functional abilities, even though the absence of those specific assessments form the basis of his rejection of the opinion. Moreover, the ALJ's cursory discussion of Dr. Stranathan's records in which he noted only that there had been intermittent evaluations and complaints of pain, failed to consider the other medical records from Dr. Stranathan that support his opinion and failed to discuss other medical records consistent with Dr. Stranathan's opinion. Further, the ALJ

addressed none of the factors for considering the proper weight to give the treating physician opinions.

The ALJ's basis for rejecting Dr. Stranathan's opinion is flawed and incomplete. The record shows that one state agency consultant opined that Mr. Shaver retained the residual functional capacity to perform medium work. AR 204-212. The ALJ determined, however, that although he was giving greater weight to the assessment provided by the state agency consultant, Mr. Shaver's testimony established he could perform only light work. AR 21. Therefore, the ALJ rejected the state agency consultant's assessment of Mr. Shaver's "specific functional abilities" -- the very evidence the ALJ cited to support his rejection of Dr. Stranathan's opinion.

Second, as the ALJ acknowledged, the state agency consultant never examined or treated Mr. Shaver. *See* AR 21 ("The consultants did not have the opportunity to examine or treat the claimant."). As the Tenth Circuit explained in *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004):

> The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.

*Id*. (citations and quotations omitted).  Contrary to these rules, the ALJ gave greater weight to the non-examining consulting physicians and he did so without providing a legally sufficient reason.

Third, the ALJ recited the findings of the consultative examination conducted by Dr. Morgan without discussing them in relation to Dr. Stranathan's treatment records.  AR 19. Dr. Morgan's findings are consistent with the treatment records of Dr. Stranathan.  For instance, Dr. Morgan noted that Mr. Shaver is "uncomfortable sitting for any period of time and when he moves he seems to act like he is having severe pain in different parts of his body."  AR 197.  Upon examination, Dr. Morgan noted that Mr. Shaver had "[t]remor of hands with apparently trigger points in the left arm."  *Id*.  He further noted "motion of joints causes discomfort and increase in his reddish complexion."  *Id*.  Dr. Morgan found that Mr. Shaver's [g]ait is slow but safe and stable, however, he cannot do heel and toe walking without pain.  He seems to walk in a semi-flexed position with spasm of the muscular jerk of the back and muscles are tense and tender in the lower back, as well as the posterior cervical area."  AR 198. Dr. Morgan's diagnoses included (1) history of cervical disk injury with probable degenerative arthritis and radiculopathy; (2) history of lumbar myalgia and pain syndrome with possible sciatica; (3) chronic obstructive pulmonary disease; (4) chest pain; and (5) essential hypertension.  *Id*.

The ALJ's failure to discuss the relationship between Dr. Morgan's findings -- a consultative physician who actually conducted an examination of Mr. Shaver -- and Dr.

Stranathan's findings is error. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The Commissioner argues that records from two of Mr. Shaver's treating physicians, Dr. Pinegar and Dr. Pendleton, AR 161-167, who treated Mr. Shaver during 1999 and 2000, support the ALJ's decision to reject Dr. Stranathan's opinion. While the ALJ recited certain portions of the treatment records from these physicians, AR 19, the ALJ did not discuss or even cite these treatment records as a basis for rejecting Dr. Stranathan's opinion. The Court, therefore, may not rely on these records as a post hoc justification for the ALJ's decision. *See Robinson v. Barnhart*, 366 F.3d at 1084 (the ALJ's decision must be evaluated based solely upon the reasons stated in the decision, and therefore the district court erred in "upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion"). Moreover, the records of these physicians are not necessarily inconsistent with those of Dr. Stranathan. Dr. Pendleton notes that Mr. Shaver presented with complaints of severe headaches, dizziness and diffuse numbness in all four extremities, and aching pain in all joints. AR 161. Based on these complaints, Dr. Pendleton recommended that Mr. Shaver be evaluated by a neurologist. AR 161-162. Dr. Pinegar also noted Mr. Shaver's complaints of diffuse pain and recommended that he see a rheumatologist. AR 165. Dr. Pinegar's records also reflect that he was prescribing pain medication for Mr. Shaver. AR 166-167.

In sum, the ALJ erred in his consideration of the treating physician opinions. The ALJ failed to give a legally sufficient reason for rejecting the treating physician opinion and, therefore, a remand is required. On remand, the ALJ must discuss the treating physician's treatment records as a whole, compare those records to other medical evidence of record and determine, on that basis, the weight that should be given to the treating physician opinion, applying the factors outlined in *Langley*. If the ALJ cannot determine the basis of Dr. Stranathan's opinions from the case record, he must make every reasonable effort to recontact Dr. Stranathan for clarification of his reasons for the opinion.

**B.     Claims Two and Three -- Challenges to the ALJ's Pain Analysis**

In his second and third claims, Mr. Shaver challenges the ALJ's findings related to pain. First, Mr. Shaver claims the ALJ erred in failing to consider his obesity and his diagnosis of chronic pain syndrome in determining his residual functional capacity. Second, he claims that failure to consider his chronic pain syndrome renders the ALJ's credibility analysis flawed.

Where, as here, the claimant has established by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the pain alleged and has shown a loose nexus between the impairment and the subjective allegations of pain, the ALJ must consider based upon both the objective and subjective evidence whether the pain is disabling. *Thompson v. Sullivan*, 987 F.2d at 1488; *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). The absence of an objective medical basis for the degree of the severity of the claimant's pain does not justify disregarding the

subjective complaints, but may impact the weight given to the claimant's subjective complaints. *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987).

In finding Mr. Shaver's allegations of pain not entirely credible, the ALJ primarily relied upon Mr. Shaver's activities of daily living. The ALJ stated:

> The evidence shows that the claimant continues to engage in a number of physical activities of daily living. He reported that he lives alone, so he must attend to his own household. He stated that he performs household chores, and he also takes care of a pet. He goes shopping for up to one hour at a time and he prepares meals. He regularly walks several blocks to pick up his mail. His statements show that he remains able to perform a number of physically significant activities despite his impairments.

AR 20. The ALJ made only a single reference to Mr. Shaver's medical records stating: "the objective medical evidence has revealed on[ly] mild and small irregularities in the claimant's spine." *Id*. The ALJ's opinion makes no reference to Dr. Stanathan's diagnosis of chronic pain syndrome, a condition also discussed in the records of the consultative physician, Dr. Morgan. AR 198. Similarly, the ALJ's opinion is void of any reference to Dr. Stranathan's possible diagnosis of fibromyalgia. AR 184.[6]

It is well-established that an ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004). Here, that is precisely what the ALJ did. And, a review

---

[6]Although not dispositive here, the Court notes that in a recent unpublished decision, the Tenth Circuit emphasized that allegations of pain related to a diagnosis of fibromyalgia may not be discounted simply on the basis that such pain is not supported by objective medical evidence. As the Court observed, "fibromyalgia is a condition that is simply not amenable to such clinical determination." *Moore v. Barnhart*, No. 03-3253, 2004 WL 2634571 at * 12 (10th Cir. Nov. 19, 2004)(unpublished op.). Mr. Shaver's diagnosis of chronic pain syndrome with a possible diagnosis of fibromyalgia is subject to similar consideration.

13

of Mr. Shaver's testimony regarding his activities of daily living show that the ALJ took liberties with describing the degree of his activity. For example, the ALJ states that Mr. Shaver "prepares meals." However, Mr. Shaver testified that he doesn't "eat a whole lot" mainly sandwiches. AR 241. He also testified that his arms get tired if he tries to make gravy. *Id*. The ALJ also found that Mr. Shaver goes shopping for up to one hour at a time. Mr. Shaver never testified as to the length of time he spends shopping for groceries. Rather, he testified that a friend drives him to the grocery store and helps him with his shopping. AR 239, 241. With respect to maintaining his household, Mr. Shaver testified that he has a small house and that it does not look very kept. AR 236, 240-241.

The ALJ also discounted Mr. Shaver's testimony regarding pain. The ALJ found that "[a]t the hearing, the claimant testified consistently with regard to his previous description of subjective complaints." AR 20. The ALJ summarized Mr. Shaver's "previous description" as "pain in his back, neck and arm" that is present at all times, "short[ness] of breath," a need to shift positions or lie down for relief from his pain and a limited ability with respect to lifting, bending and stooping. *Id*.

At the hearing, however, Mr. Shaver testified to additional aspects of his pain not addressed by the ALJ. He stated that his hands go numb and he gets "splitting headaches." AR 231. These headaches occur at least five days a week. AR 234. He testified that he does not take medication for these headaches because he cannot afford the medication. *Id*.

Mr. Shaver also testified that his arms get very weak and will "shake out of control" if he tries to do too much. AR 236. He testified that he does not sleep for more than two to

five hours a night due to pain. AR 243. He also testified that he could not be seen at the chronic pain clinic because he could not pay for services there. AR 245.

The ALJ's pain analysis is deficient. Most critically, the ALJ did not discuss Mr. Shaver's diagnosis of chronic pain syndrome. In addition, the ALJ took liberties with the description of Mr. Shaver's daily activities. Similarly, the ALJ failed to accurately describe Mr. Shaver's testimony regarding pain. At the hearing before the ALJ, the vocational expert testified that all competitive work would be eliminated for "an individual who's unable to complete an 8-hour day, 5 days a week due to the kind of complaints the claimant's testified here to concerning pain and other complaints . . . ." AR 250. Without a proper pain analysis, the Commissioner's decision cannot stand. A remand, therefore, is required.[7]

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

ENTERED this  20th  day of May, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE

---

[7]Because a remand is required as a result of the ALJ's failure to address Mr. Shaver's chronic pain syndrome and other noted deficiencies with the pain analysis, whether the ALJ also erred in failing to address Mr. Shaver's obesity is not analyzed. *See* Soc. Sec. Rul. 02-01p (Evaluation of Obesity). On the record presented, there is scant evidence that any objective medical evidence would support findings of functional limitations based on obesity. On remand, however, the ALJ should ensure that all of Mr. Shaver's conditions that have an impact on his residual functional capacity are properly considered and discussed.